UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SARA T.,

                        Plaintiff,

v.                                                              5:19-CV-00725(TWD)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINSKY LAW GROUP<br>for Plaintiff<br>250 South Clinton Street, Suite 210<br>Syracuse, NY 13202 | MELISSA DelGUERCIO, ESQ. |
| HON. GRANT JAQUITH<br>United States Attorney<br>for Defendant<br>100 S. Clinton St.<br>PO Box 7198<br>Syracuse, NY 13261-7198 | MOLLY CARTER, ESQ.<br>Special Assistant |

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**<u>ORDER</u>**

      Presently before the Court in this action, in which Plaintiff seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on August 18, 2020, during a telephone conference at which a court reporter was

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

present.  At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found the Commissioner's determination resulted from the application of proper legal principles and was supported by substantial evidence, and I provided further detail regarding my reasoning and addressing the specific issues raised by the Plaintiff in her appeal.

After due deliberation, and based upon the Court's oral bench decision, which has been transcribed, is attached to this Order, and is incorporated in its entirety by reference herein, it is hereby,

**ORDERED**, as follows:

(1) Defendant's motion for judgment on the pleadings is **GRANTED**;

(2) The Commissioner's determination that Plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is **AFFIRMED**; and

(3) The Clerk is directed to enter judgment, based upon this determination, dismissing Plaintiff's complaint in its entirety.

SO ORDERED.

Dated: August 27, 2020
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SARA T.,

                                        Plaintiff,

-v-                                     5:19-CV-725

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
------------------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE THÉRÈSE WILEY DANCKS**
August 18, 2020
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    OLINSKY LAW GROUP
    250 South Clinton Street
    Suite 210
    Syracuse, New York 13202
    BY: **MELISSA A. DELGUERCIO, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    625 JFK Building
    15 New Sudbury Street
    Boston, Massachusetts 02203
    BY: **MOLLY CARTER, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1            (The Court and all parties present by telephone.
2   Time noted:  11:57 a.m.)
3            THE COURT:  I have before me a request for judicial
4   review of an adverse determination by the Acting Commissioner
5   under 42, United States Code, Section 405(g).  The background is
6   as follows:  Plaintiff was born in February of 1988 and is
7   currently 32 years old.  She was 27 years old at the onset of
8   her alleged disability.  She completed 9th grade and has her
9   GED.  She has not engaged in substantial gainful activity since
10  the alleged onset date.  She previously worked as a hotel
11  housekeeper, a picture frame assembler, and a McDonald's service
12  worker.  In her application for benefits, she indicated she
13  suffers from spinal stenosis, bulging discs, posttraumatic
14  stress disorder, anxiety, and depression.
15           Procedurally, plaintiff filed for Title II and Title
16  XVI benefits on May 19, 2016.  The application alleged
17  disability beginning on October 10, 2015.  A hearing was held on
18  September 13, 2018, conducted by Administrative Law Judge
19  Jennifer Gale Smith wherein plaintiff and a vocational expert
20  testified.  Plaintiff was represented by an attorney at that
21  hearing and she was also represented through the Appeals Council
22  process.  ALJ Smith issued a decision on September 26, 2018,
23  finding that plaintiff was not disabled at the relevant times.
24  The Appeals Council denied review on April 25, 2019, making it
25  the final determination of the agency.  This timely District

1   Court action followed.
2           ALJ Smith applied the five-step sequential test for
3   determining disability.  At step one, she found plaintiff had
4   not engaged in substantial gainful activity since the onset date
5   of disability.
6           At step two, she concluded plaintiff has the
7   following severe conditions:  Back, neck, and left knee
8   impairments, and depression and anxiety.
9           At step three, the ALJ concluded that plaintiff's
10  conditions do not meet or medically equal any of the listed
11  presumptively disabling conditions, considering several listings
12  related to the spine and joint disorders and mental health.
13  Then after a review of the record evidence, the ALJ determined
14  plaintiff is capable of performing sedentary work, but with
15  several detailed additional postural and nonexertional
16  limitations considering her physical and mental abilities.
17          At step four, the ALJ concluded plaintiff could not
18  perform her past relevant work.
19          At step five, the ALJ applied the Medical-Vocational
20  Guidelines, as well as obtaining testimony from a vocational
21  expert, and concluded that plaintiff was not disabled.
22          As relevant to the time period in question, plaintiff
23  treated for primary care at Samaritan Health, mainly with Dr.
24  Jason Federline.  She saw a few other providers there, but the
25  vast majority of encounters were with Dr. Federline, and the

1  three most recent office visits were with Dr. Gurpreet Kaur.
2  She was also treated by Dr. Charles Wasicek, a rheumatologist,
3  and by Nurse Practitioner Mylene Jumalon, who worked at Pain
4  Solutions of Northern New York.  Plaintiff treated with various
5  providers at North Country Orthopaedics and also received some
6  limited physical therapy there.  Numerous notes of treatment and
7  testing at Samaritan Medical Center are also contained in the
8  file.
9          Mental health treatment during the relevant time
10 period was provided by Nurse Practitioner Patricia Desjarlais at
11 River Hospital who provided pharmacology therapy and Licensed
12 Clinical Social Worker Bobbi Bailey who provided talk therapy
13 and counseling.  Also during the time period at issue, relevant
14 diagnostic studies performed included X-rays of her left knee,
15 bone scans, and MRIs of her pelvis, lumbar spine, and cervical
16 spine.  Source statements in the record are from Nurse
17 Practitioner Desjarlais, which was countersigned by Dr. Littell,
18 dated July 10, 2017, and Social Worker Bailey dated June 21,
19 2017.  Other opinions in the record are from internal medicine
20 consultant Dr. Elke Lorensen dated August 9, 2016, who opined on
21 plaintiff's physical limitations and psychologist Cheryl Loomis
22 dated August 25, 2016, who conducted a psychological evaluation.
23 Agency record reviewer psychologist Dr. Bruno also provided an
24 opinion dated September 7, 2016, regarding plaintiff's mental
25 limitations.

1    I've reviewed the record carefully and in light of
2    the arguments of counsel and what counsel has presented in their
3    briefs, I have applied the requisite deferential standard, which
4    requires me to determine whether proper legal principles were
5    applied and whether the result is supported by substantial
6    evidence.  Plaintiff argued that the ALJ erred in the
7    determination of plaintiff's residual functional capacity, or
8    RFC, and specifically that the ALJ erred in failing to explain
9    that part of the RFC regarding the ability to reach and to
10   extend, flex, and rotate her cervical spine, and also that the
11   ALJ erred in weighing the opinions of plaintiff's treating
12   mental healthcare providers.
13       I've done a thorough and searching review of the
14   record and find that the ALJ properly assessed the medical and
15   nonmedical evidence of record and the RFC is supported by
16   substantial evidence.  The ALJ thoroughly discussed the medical
17   evidence and other evidence of the record, formulated the RFC
18   based upon an assessment of all medical and nonmedical evidence
19   as a whole for the relevant time period, and thoroughly
20   explained her analysis in arriving at the RFC.
21       The ALJ's decision showed she considered plaintiff's
22   testimony, her adult function report, her activities of daily
23   living, and all of the treatment records for the relevant
24   period.  She gave great weight to the opinion of consultant
25   Dr. Lorensen, partial weight to the opinions of consulting

1   psychologist Dr. Loomis and agency consultant Dr. Bruno, and
2   less weight to the opinions of Social Worker Bailey and Nurse
3   Practitioner Desjarlais.  None of the plaintiff's providers who
4   treated her physical complaints provided a source statement.
5           Regarding plaintiff's physical functioning, plaintiff
6   argues the ALJ's assessment of the opinion of Dr. Lorensen is
7   vague and the RFC does not account for plaintiff's limited
8   ability to reach and turn her head.  The plaintiff further
9   argues the ALJ did not properly explain her reasons for
10  plaintiff's RFC regarding reaching and turning her head and the
11  records do not support the stated RFC in that regard.  Rather,
12  plaintiff argues the record supports greater impairment than the
13  RFC as found by the ALJ.
14          As for plaintiff's mental functioning, plaintiff
15  contends that part of the RFC is not supported by the record
16  evidence and the ALJ did not give appropriate weight to Nurse
17  Practitioner Desjarlais's opinion, which was countersigned by
18  Dr. Littell, or to Social Worker Bailey's opinion, and erred in
19  giving more weight to the opinions of Dr. Loomis and Dr. Bruno
20  than to the opinions of Bailey and Desjarlais, especially since
21  Bruno and Loomis's opinion preceded the treatment notes of
22  Desjarlais and Bailey, and the argument is that they were, thus,
23  stale.
24          For the following reasons I find these arguments
25  unpersuasive.  Initially, I note that an ALJ is not required to

1  accept every limitation assessed by a provider or an examining
2  consultant as set forth in their respective opinions, nor must
3  the RFC identically track any one of those opinions.  The ALJ
4  has the responsibility of reviewing all of the evidence before
5  her, resolving inconsistencies, and making a determination
6  consistent with the evidence as a whole.  It is the ALJ's
7  responsibility to weigh the various opinions, along with other
8  evidence, and determine which limitations were supported by the
9  overall evidence of record.  The Court cannot reweigh the
10 evidence under the substantial evidence review standard.
11          Here, I find the ALJ clearly considered all of the
12 opinions and other evidence of record when determining
13 plaintiff's overall RFC, including the mental limitations.  I've
14 done a thorough and searching review of the record and find that
15 the ALJ properly assessed the opinions and gave good reasons for
16 the weight given to the opinions.
17          Regarding the opinion of Dr. Lorensen and the
18 physical limitations set forth in the RFC regarding plaintiff's
19 ability to reach and turn her head, I find the record evidence
20 supports the RFC determination and the ALJ reasonably relied on
21 Dr. Lorensen's opinion, as well as other evidence of record.
22 The ALJ noted that great weight was given to Dr. Lorensen's
23 opinion because it was based on an exam of plaintiff wherein
24 plaintiff had a normal gait, could rise from a chair without
25 difficulty, had a somewhat restrictive range of motion of the

1  spine with full strength in the upper and low extremities, no
2  sensory deficits, and no muscle atrophy.  The ALJ also noted the
3  diagnostic studies showed no major issues with the neck and
4  back, plaintiff had extensive daily activities, and Dr. Lorensen
5  had professional expertise.
6           This opinion and the resulting physical RFC is
7  supported by the evidence in the record beyond Dr. Lorensen's
8  exam.  For example, at North Country Orthopaedics, she exhibited
9  some tenderness in her lumbar spine, but she had a normal gait,
10 negative straight leg raise test, and could easily transfer to
11 various positions such that her mobility was independent and she
12 could change into an exam gown and shorts independently.  She
13 had full flexion and extension of her neck and full rotation of
14 her neck, although on one exam it caused pain.  She had full
15 range of motion in her upper extremities and had at least four
16 out of five strength in all muscle testing.  Her upper and lower
17 reflexes were full and sensation in her C5 to T1 dermatomes were
18 symmetric and full.  She was treated conservatively with
19 physical therapy recommended and medications.  Of note, the
20 plaintiff did not complete the physical therapy as recommended.
21          At Pain Solutions of Northern New York, her neck
22 range of motion was within normal limits on exam, although she
23 had trigger points in paracervical musculature and
24 sub-paraspinal tenderness.  Her back was normal except for some
25 paraspinal tenderness.  Upper extremity sensation was completely

intact.  Reflexes in all four extremities were normal and full and her gait and station were normal.  Physical therapy was also recommended by the nurse practitioner at Pain Solutions.

Dr. Wasicek found her to have some loss of flexion in her low back and she lacked only ten degrees of rotation of her neck to the right.  Her shoulders, hip, and other joints were normal on exam, although she had mild trapezius triggering.  Dr. Federline at Samaritan Health found some paraspinal tenderness in her lower back, but no muscle wasting and normal strength.  Despite noting cervical spine MRI findings of a mild disc bulge in the C5-6 area without canal stenosis, the various treatment notes from Samaritan Health only document cervical tenderness on one visit after the plaintiff fell.

Other notes indicate she denied neck pain and had normal range of motion in her musculoskeletal exams.  Findings on exams of extremities and her spine at Samaritan Medical Center during the relevant time period also show normal exams with painless and full range of motion relating to her neck and extremities.

An MRI of the cervical spine done on April 14, 2016, showed minimal disc bulge at the C5-6 level with mild stenosis, but no nerve root compression.  An MRI of the cervical spine done on September 25, 2017, showed the same with no change from the previous study.  An MRI of the lumbar spine completed on January 21, 2016, showed a disc bulge at the L4-5 level without

1   nerve root compression.  An MRI of the pelvis done in August of
2   2016 showed the same diffuse disc bulge at the L4-5 level, but,
3   again, no nerve root compression at the L5 level.  Bone scans in
4   August of 2016 and July of 2017 were entirely normal.
5   Diagnostic tests of her left knee were normal and Dr. Powell
6   from North Country Orthopaedics recommended exercising on an
7   exercise bike 25 to 30 minutes 4 to 5 times per week.
8           Given this summary of the medical records, I find the
9   weight given to Dr. Lorensen's opinion is appropriate and the
10  reasons for giving it great weight were properly explained and
11  supported by the records, which showed generally mild findings
12  regarding her neck and upper extremities and improvement with
13  conservative treatment.  The ALJ's RFC finding limiting
14  plaintiff to sedentary work with other postural limitations
15  regarding reaching and neck movement is consistent with the
16  records and she gave good reasons for the weight given to Dr.
17  Lorensen's opinion, which was not vague and was supported by her
18  own examination notes, the notes of other providers, and the
19  diagnostic tests.
20          Additionally, the RFC, including the reaching and
21  neck movement findings for plaintiff, is likewise supported by
22  plaintiff's daily activities.  Plaintiff testified she lives
23  with her boyfriend and three children for whom she provides care
24  and who are ages ten, seven, and four in 2018.  She also cooks,
25  does laundry with help folding, grocery shops, and does light

1   housework.  In her function report, she indicated she drives and
2   can go out alone and shop for whatever her kids need.  She can
3   dress, bathe, and groom herself, and she told Dr. Loomis she
4   spends her days doing chores, going to appointments, caring for
5   her children, and watching TV.
6            As such, I find no error with the ALJ's consideration
7   of Dr. Lorensen's opinion and the physical RFC, including the
8   ALJ's finding for reaching and turning her head, and I find that
9   they are supported by the record evidence.  While plaintiff
10  complained of pain, her own reports of pain are insufficient to
11  demonstrate the existence of more limited restrictions where
12  substantial evidence supports the ALJ's determination.
13           Turning to plaintiff's mental capacity and her
14  argument that the ALJ did not properly weigh the opinions of
15  Social Worker Bailey and Nurse Practitioner Desjarlais, I find
16  no error with the consideration and explanation of the weight
17  given to those opinions, and I find no error with the ALJ's
18  determination to give more weight to the opinions of consultants
19  Dr. Loomis and Dr. Bruno than to the opinions of those treating
20  providers.  I find substantial evidence supports the ALJ's RFC
21  finding that plaintiff can do simple routine repetitive tasks
22  with occasional decisionmaking, judgement, changes, and contact
23  with others, and do goal-oriented instead of production pace
24  rate work.
25           First, Dr. Loomis examined plaintiff and has agency

```
 1   expertise.  Her opined limitations were consistent with her own
 2   exam findings, which were largely unremarkable.  Dr. Loomis
 3   found plaintiff normal in appearance and motor behavior, fluent
 4   and adequate in her speech, goal directed in her thought process
 5   with an appropriate affect and normal mood.  Plaintiff had clear
 6   sensorium, was fully oriented, had intact
 7   attention/concentration and recent and remote memory skills, she
 8   had average cognitive functioning, fair insight, and good
 9   judgement.  The ALJ noted that she gave partial weight to
10   Dr. Loomis's opinion because Dr. Loomis did not adequately
11   consider plaintiff's subjective complaints.  However, the ALJ
12   noted that Dr. Loomis's opinion was generally consistent with
13   plaintiff's daily activities as outlined above, and with her
14   lack of inpatient mental health treatment and limited outpatient
15   treatment.
16            In discounting Social Worker Bailey's opinion, the
17   ALJ explained she gave it less weight because it was not
18   consistent with the opinions of Dr. Loomis and Dr. Bruno, who
19   have more expertise, and was not consistent with the record,
20   including plaintiff's extensive daily activities.  The ALJ gave
21   less weight to the opinion of Nurse Practitioner Desjarlais for
22   the same reasons.
23            In reviewing the record as a whole, the charting of
24   the encounters at Samaritan Medical Center consistently note
25   that plaintiff does not present as anxious or depressed and that
```

her mood and affect are normal.  While plaintiff reported anxiety and depression when seen at North Country Orthopaedics, she denied mood changes and, on exam, her mood and affect were consistently charted as appropriate and euthymic or normal.  She was consistently found to be pleasant, alert, and oriented in all spheres on most exams at Samaritan Health.  Although she complained of depression and mood swings, psychiatric findings were charted as appropriate with regard to mood and affect.  Her speech was normal.  Findings did note a flat affect and monotone on two later encounters, but she had intact recent and remote memory, judgment, and insight.  Thereafter at a subsequent visit, she denied depression or anxiety.

Dr. Wasicek noted her to have a normal affect and no slowing to indicate depression.  While plaintiff complained of depression, anxiety, and memory loss to Nurse Practitioner Jumalon at Pain Solutions of Northern New York, on exam she was found to have an appropriate affect and mood, normal interaction, good eye contact, and no pain behaviors were exhibited.

Plaintiff treated approximately every one to two months with Social Worker Bailey.  Of the approximate 19 encounters in 2 years, plaintiff exhibited a lack of energy and depressed or anxious mood with difficulty concentrating on the first two visits, but, thereafter, nothing significant was reported or observed in the mental status exam.  Plaintiff

1  reported improvement, although she had occasional outbursts with
2  her family due to frustration with some behaviors of her
3  children.  Later records showed her mood is stable and she was
4  in good spirits.
5        The psychiatric intake evaluation with Nurse
6  Practitioner Desjarlais indicated plaintiff appeared normal in
7  hygiene and grooming with relaxed motor activity.  She was noted
8  to be cooperative with normal speech and expressive language,
9  although she had a flat affect and depressed mood.  She was
10 oriented and attentive with fair concentration, but forgetful in
11 recent and remote memory.  Still, she had fair judgment and
12 insight, but poor impulse control.  In later reports, Nurse
13 Practitioner Desjarlais noted plaintiff missed several
14 appointments, but she showed moderate progress in her ability to
15 manage mild symptoms of her psychiatric health.
16       The ALJ's decision shows she understood plaintiff's
17 treatment relationship with Social Worker Bailey, as the ALJ
18 noted Bailey to be the plaintiff's social worker.  Based on the
19 records as I've just outlined concerning plaintiff's psychiatric
20 findings and care, I find the ALJ properly gave less weight to
21 the opinions of Social Worker Bailey and Nurse Practitioner
22 Desjarlais whose opinions were not consistent with the findings
23 of Dr. Loomis or Dr. Bruno who have greater expertise, and were
24 not consistent with the medical records as I've outlined them or
25 with the plaintiff's daily activities.  Thus, I find that the

1  ALJ considered the relevant factors when weighing these opinions
2  by noting the opinions were inconsistent with examinations and
3  treatment notes in the record and plaintiff's limited mental
4  health treatment.
5           Further, as noted, the mental limitations in the RFC
6  were consistent with the opinion of non-examining agency
7  consultant Dr. Bruno whose opinion is consistent with other
8  findings in the record.  Although Dr. Bruno did not personally
9  examine the plaintiff, it is well settled that the opinions of
10 State agency consultants can be given great weight if supported
11 by medical evidence and other evidence of record.  The ALJ
12 stated, and the record supports, that she gave partial weight to
13 the opinions of Dr. Loomis and Dr. Bruno because of their
14 programatic expertise and Dr. Loomis's findings on exam, and
15 they were supported by the records and of plaintiff's
16 activities.
17          Therefore, I also find that all of the treatment
18 outlined above was thoroughly reviewed by the ALJ and the
19 records provide clear and substantial evidence to support the
20 RFC determination such that meaningful judicial review is
21 possible.  Only where the reviewing court is unable to fathom
22 the ALJ's rationale in relation to the evidence in the record
23 would remand be appropriate for further findings and clearer
24 explanation for the decision.  Here, I find the ALJ's analysis
25 regarding plaintiff's functional limitations and restrictions

1   affords an adequate basis for meaningful judicial review,

2   applies the proper standards, and is supported by substantial

3   evidence such that additional analysis would be unnecessary.

4              All in all, I find the ALJ properly weighed the

5   opinions of record for the relevant period, gave good reasons

6   for the weight given to the opinions, and considered all of the

7   medical evidence.  The ALJ also properly considered plaintiff's

8   own reported activities per her testimony, her function report,

9   and as she reported to providers and consultants.  All of this

10  supports the ALJ's determination of plaintiff's RFC.

11             In short, I find the ALJ properly explained the

12  reasons for the RFC, so in light of the foregoing and

13  considering the entire record and the ALJ's determination, I

14  find the ALJ applied the appropriate legal standards of review

15  in considering the opinion evidence in determining plaintiff's

16  RFC and the RFC is supported by substantial evidence, and remand

17  is therefore not warranted on these grounds.

18             Lastly, I find plaintiff's step five argument

19  unavailing for the reasons argued by the Commissioner.  The

20  ALJ's hypothetical was consistent with the RFC, which I have

21  found supported and properly explained.  I also find no conflict

22  between the Dictionary of Occupational Titles and the jobs the

23  vocational expert indicated plaintiff can do with her mental

24  RFC.  The jobs identified by the vocational expert are unskilled

25  with simple duties consistent with the RFC limiting plaintiff to

1  simple routine work.
2            Thus, I find no inconsistency between the vocational
3  expert testimony and the DOT, so I grant defendant's motion for
4  judgment on the pleadings and will enter a judgement dismissing
5  plaintiff's complaint in this action.  A copy of the transcript
6  of my decision will be attached to the order should any appeal
7  be taken from my determination.
8            (Time noted:  12:19 p.m.)

```
 1
 2                    CERTIFICATE OF OFFICIAL REPORTER
 3
 4
 5            I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,
 6   NYRCR, Official U.S. Court Reporter, in and for the United
 7   States District Court for the Northern District of New York, DO
 8   HEREBY CERTIFY that pursuant to Section 753, Title 28, United
 9   States Code, that the foregoing is a true and correct transcript
10   of the stenographically reported proceedings held in the
11   above-entitled matter and that the transcript page format is in
12   conformance with the regulations of the Judicial Conference of
13   the United States.
14
15            Dated this 24th day of August, 2020.
16
17           x Hannah F. Cavanaugh
18             HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
19             Official U.S. Court Reporter
20
21
22
23
24
25
```